# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:23-CR-00170 |
| v. | (Chief Judge Brann) |
| JAMES CASHER, | |
| Defendant. | |

## MEMORANDUM OPINION

### OCTOBER 7, 2024

## I.   BACKGROUND

On June 21, 2023, a Grand Jury sitting in the Middle District of Pennsylvania returned a three-count indictment against James Casher, charging him with: one count of Enticement in violation of 18 U.S.C. § 2422(b); one count of Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2); and one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4). Casher filed his First Motion to Suppress Evidence on January 29, 2024,[1] which the Court denied on March 22, 2024.[2] In doing so, the Court relied, in part, on a vehicle registered in Defendant's name. At some point after the Court delivered its Memorandum Opinion on the First Motion to Suppress Evidence, Casher learned that the vehicle was in fact registered to his father. Defendant subsequently filed a Second Motion

---

[1]   Doc. 40 (First Motion to Suppress Evidence).
[2]   Doc. 47 (Ord. Denying First Motion to Suppress Evidence).

to Suppress Evidence and Motion for a *Franks* Hearing on July 29, 2024.[3] That motion is now ripe for disposition; for the reasons that follow, it is denied in part.

## II.   DISCUSSION

### A.   *Franks* Standard

In *Franks v. Delaware*, "the Supreme Court [of the United States] held that the Fourth Amendment entitles a criminal defendant to an opportunity to overcome the presumption of validity of an affidavit of probable cause by proving both (1) that the affidavit contained 'a false statement [made] knowingly and intentionally, or with reckless disregard for the truth,' and (2) that once the allegedly false statement is removed, the remainder of the affidavit 'is insufficient to establish probable cause.'"[4] A false statement can either be an omission or a misrepresentation.[5] "The Supreme Court in '*Franks* gave no guidance concerning what constitutes a reckless disregard for the truth in fourth amendment cases, except to state that 'negligence or innocent mistake [is] insufficient.'"[6]

In *Wilson v. Russo*, the United States Court of Appeals for the Third Circuit "set forth standards to identify what constitutes 'reckless disregard for the truth' regarding both misstatements and omissions:"[7]

---

[3]   Doc. 55 (Second Motion to Suppress Evidence and Motion for a *Franks* Hearing).
[4]   *United States v. Gordon*, 664 F. App'x 242, 244-45 (3d Cir. 2016) (quoting *Franks v. Delaware*, 438 U.S. 154, 156, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)).
[5]   *E.g.*, *United States v. Heilman*, 377 F. App'x 157, 178 (3d Cir. 2010).
[6]   *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) (quoting *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000)).
[7]   *Id.*

> In evaluating a claim that an officer both asserted and omitted facts with reckless disregard for the truth, we hold that: (1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting.[8]

The Third Circuit has indicated that "the latter standard is similar to the actual malice standard set forth in First Amendment defamation claims."[9] But our Court of Appeals has also noted that often "it is desirable for officers to provide the magistrate with a distilled version of the circumstances giving rise to probable cause."[10] Further, Casher "cannot rest on mere conclusory allegations or a 'mere desire to cross-examine,' but rather must present an offer of proof contradicting the affidavit …."[11]

Given the "countervailing interests in promoting finality and judicial efficiency, the [Supreme] Court established a two-step procedure for a defendant to prevail on a motion to suppress on the basis of an alleged false statement: first, the defendant must make a 'substantial preliminary showing' with respect to both *Franks* elements to warrant a hearing, and, second, at that hearing, the defendant must carry his ultimate burden of proving both elements."[12]

---

[8] *Wilson*, 212 F.3d at 783.
[9] *Yusuf*, 461 F.3d at 383.
[10] *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 471 n.10 (3d Cir. 2016).
[11] *Yusuf*, 461 at 383.
[12] *Gordon*, 664 F. App'x at 245.

B.  Analysis

1.  The Reconstructed Affidavit of Probable Cause

Defendant must first make an adequate preliminary showing that Federal Bureau of Investigation Special Agent James Fox's statements in the affidavit were deliberately false or demonstrated a reckless disregard for the truth. Here, Defendant draws the Court's attention to the affiant's improper use of "James Casher, Jr." to describe him and the vehicle that is registered in Defendant's father's name, James P. Casher. In response, the Government argues that Casher has failed demonstrate that a deliberately false or reckless statement was made. The Government sets forth two bases for this proposition: this mistake can be attributed to "sloppy and careless" drafting and the statement is technically not factually inaccurate.[13]

The Third Circuit has held that "omissions are made with reckless disregard if an officer withholds a fact in his ken that 'any reasonable person would have known that this was the kind of thing the judge would wish to know.'"[14] It is evident that at some point Special Agent Fox reviewed the vehicle registration as he averred that "[t]he red Ford F150 bearing Pennsylvania license plate ZRJ6426 was registered to James **CASHER** with a registration address of 193 Sunset Circle, Tioga, PA 16946."[15] Here, a reasonable person would want to know that there are in fact two

---

[13] Doc. 60 (Brief in Opposition to Second Motion to Suppress Evidence and Motion for a *Franks* Hearing) at 6-7.
[14] *Wilson*, 212 F.3d at 788.
[15] Doc. 40 (First Motion to Suppress Evidence), Ex. A (Search and Seizure Warrant) at 29-30.

"James Cashers" that resided at 193 Sunset Circle; without this information, all facts seemingly suggest that this Defendant was the "Jim50" user that uploaded the suspected Child Sexual Abuse Material. Further, Fox appeared to know of James P. Casher's existence. By referring to this Defendant as "James Casher, Jr.," Fox attempted to distinguish between Defendant and his father. In doing so, Fox seemingly revealed that he had reason to know that he was misrepresenting the evidence by failing to clarify which "James Casher" was connected to this vehicle. Accordingly, this inaccuracy can be viewed as both a misrepresentation and an omission. It misrepresents the strength of Defendant's ties to the "Jim50" username and omits the fact there are two James Cashers residing at 193 Sunset Circle.

While the Government contends that this is a straightforward mistake where the affiant "overlooked the middle initial of James P. and James R. Casher and simply recorded the first name – James – of each," this argument does not address the Court's concerns described above. Should a hearing prove necessary, the Government is welcome to call the special agents involved in this investigation as witnesses to rebut Defendant's preliminary showing.

Finally, the Government highlights that the description of the vehicle registration is factually accurate as it is in fact registered to a "James Casher" at 193 Sunset Circle. While the Government is correct that "[t]he affiant does not further aver that the car specifically belongs to the [D]efendant," this argument is not

5

persuasive. As there is no indication that another "James Casher" resides at 193 Sunset Circle in the original affidavit, the only logical inference is that it belongs to Defendant. In fact, the Court drew this very inference when evaluating Casher's First Motion to Suppress Evidence.

The Court does not decide whether these false statements were made intentionally or recklessly but merely notes that Casher has made the requisite preliminary showing as to the first *Franks* prong. Based on this conclusion, I must now reconstruct the affidavit of probable cause; I do so by making the appropriate changes in bold. Given the length of the affidavit and the inclusion of Special Agent Fox's professional background and boilerplate language,[16] I limit this reconstruction to the facts unique to the circumstances of this case. The reconstructed affidavit reads as follows:[17]

> As a Federal Agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States. This application seeks authority to search the

---

[16] The boilerplate language addresses the characteristics of collectors of child pornography; methods for the distribution of child pornography; statutory definitions; and information concerning electronic devices. Doc. 40 (First Motion to Suppress), Ex. A (Search and Seizure Warrant).

[17] The Court did not receive a copy of the affidavit of probable case with Defendant's Second Pretrial Motion to Suppress Evidence and Motion for a *Franks* Hearing. Accordingly, I rely on the copy previously provided to the Court in Casher's First Motion to Suppress. Doc. 40 (First Motion to Suppress), Ex. A (Search and Seizure Warrant). Portions of this affidavit were originally bolded. To avoid confusion with the reconstructed affidavit, I leave these sections in normal typeface. Finally, there are multiple instances where the affiant merely describes the premises and person to be searched in a heading. These would also be corrected to reflect James R. Casher, as opposed to James Casher, Jr., but are omitted from the reconstructed affidavit due to their generic nature.

following (hereinafter referred to the TARGET LOCATIONS), which are located in the Middle District of Pennsylvania:

a) The premises located at 193 Sunset Circle, Tioga, PA 16946 (SUBJECT PREMISES), more specifically described in Attachment A1; and

b) The person of **JAMES ROBERT CASHER** ~~JR.~~ (CASHER) (SUBJECT'S PERSON), as well as objects on his person or in his custody or control, more specifically described in Attachment A2.

c) Digital devices found in the SUBJECT PREMISES and on the SUBJECT'S PERSON.

……………………………………………………………………………

*Overview*

On 05/01/2023, FBI Williamsport Resident Agency received a lead from FBI Jacksonville Division regarding the distribution of child pornography from an IP address resolving in Tioga, PA. A Confidential Human Source (herein after referred to as "CHS") is providing information to SA CJ Goodman in the Jacksonville Division of the FBI. CHS is a moderator/administrator of an adult chat website who, on or about March 6, 2023, identified a user bearing username "Jim50" hereafter referred to as the TARGET ACCOUNT, posted Child Sexual Abuse Material (CSAM). Child abuse material is defined as child exploitation material meeting the Federal statutory definition of Title 18 U.S.C. 2256(8) depicting children engaged in sexually explicit conduct i.e.: sexual intercourse to include genital-genital, oral-genital, anal-genital, or oral-anal; masturbation; or the lewd and lascivious exhibition of the genitals or pubic area. The image uploaded was a color image of a nude female minor with genitalia exposed.

*Subpoena to Identify User of the TARGET ACCOUNT*

Through the CHS, FBI Jacksonville determined the TARGET ACCOUNT was utilizing IP address 2603:7080:55f0:7910:8533:5f3b:5906:7ef3, hereafter referred to as the SUSPECT IP ADDRESS on 03/06/2023 at 12:12 PM Eastern. Charter Communications provided the following subscriber information for the

IP address, 2603:7080:55f0:7910:8533:5f3b:5906:7ef3, hereafter referred to as the SUSPECT IP ADDRESS.

Subscriber Name: Tammy Casher

Service Address: 193 Sunset Cir, Tioga, PA 169569761

User Name or Features: jamesrcasher@yahoo.com, tammylcasher@gmail.com

Phone Number: [REDACTED]

*Overview of CHS and the Adult Chat Website Known as "Website A"*

I learned the following based on conversations with FBI Jacksonville Division SA CJ Goodman ("SA Goodman") and Staff Operations Specialist (SOS) Bianca Forte, and my review of electronic files and documents from FBI Jacksonville Division: In late Fall 2015, a Confidential Human Source (CHS) contacted the FBI Jacksonville Division to report apparent child pornography posted in the adult chat portion of an adult chat website, hereinafter referred to as "Website A."[18] FBI Jacksonville Division spoke to the CHS and obtained the information about the apparent child pornography on Website A. FBI Jacksonville Division disseminated the information to another FBI office where a state search warrant was obtained and executed. The subject of the search warrant was subsequently arrested and prosecuted for violating state child pornography laws. CHS has been a moderator of Website A for several years and is able to view usernames and IP addresses for all users of the chatroom CHS moderates. As a moderator, CHS has a "seen" presence in the chatroom and is able to kick out and/or ban users for violations of the websites posted rules and regulations. When CHS observes a posting that he/she believes contains criminal activity, to include, but not limited to, child pornography, hate

---

[18] The actual name of "Website A" is known to law enforcement. "Website A" is a legal, active website and disclosure of the name of the website would potentially alert its users to the fact that law enforcement action is being taken against some of the users of the website, thereby provoking users to notify other users of law enforcement action, flee and/or destroy evidence. Accordingly, to protect the confidentiality and integrity of the ongoing investigation involved in this matter and the identity of the Confidential Human Source providing information to law enforcement, specific names and other identifying factors have been replaced with generic terms and the website will be identified herein as "Website A."

crimes, and violence, CHS conducts a "screen recording" of the posting which contains the following: the posting, the username of the individual making the post, and the IP address associated with the user and provides the information to SA Goodman. SA Goodman has advised me that FBI Jacksonville has utilized CHS for approximately six years and has found the CHS to be credible. SA Goodman further advised me that FBI Jacksonville Division has disseminated information provided by the CHS which has led to at least twelve arrests and/or search warrant executions and additional investigative activities around the United States.

*Subject Bio*

A criminal history inquiry of JAMES **ROBERT** CASHER J̶R̶., Date of Birth (DOB) [REDACTED], revealed negative results. A driver's license query revealed the following photo for CASHER.

[PHOTOGRAPH OF CASHER]

*Surveillance Conducted at SUBJECT PREMISES*

On 05/17/2023, Agents conducted surveillance at 193 Sunset Circle, Tioga, PA 16946. During surveillance, Agents identified a red Ford F150 Pennsylvania license plate ZRJ6426, a black Dodge Dart with an unknown license plate, and a maroon Honda Ridgeline located behind the residence with an unknown license plate. The red Ford F150 bearing Pennsylvania license plate ZRJ6426 was registered to **James P. Casher** with a registration address of 193 Sunset Circle, Tioga, PA 16946.

2. **Probable Cause Standard**

I must now determine whether Casher has made the requisite showing regarding he materiality of the purportedly false statements. To do so, I consider the "totality of the circumstances" to determine if "there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'"[19] "This

---

[19] *Gordon*, 664 F. App'x at 245 (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)).

determination does not require 'absolute certainty' that evidence of criminal activity will be uncovered, but only that it is 'reasonable to assume' that the requested search will lead to the discovery of the sought-after evidence."[20] As there are two searches at issue, I analyze them separately below.

### 3. The Search of 193 Sunset Circle

Probable cause to search 193 Sunset Circle exists under the reconstructed affidavit. As described above, an IP address associated with this residence was used to upload suspected CSAM to a website known to be used by distributors and collectors of child pornography. Law enforcement received this information from a reliable confidential source that had previously contributed to several investigations. As the Court has previously indicated, two of the six so-called *Dost* factors were definitively satisfied by the image at issue, and the method of distribution of the image substantially increased the likelihood it is CSAM.[21] In summary, an IP address resolving in 193 Sunset Circle used a semi-anonymous username to upload a nude image of a female minor with her genitalia exposed to an adult chat site known by law enforcement to be used by collectors and distributors of child pornography.

While I previously relied on the good faith exception as this case presented no novel issues,[22] I conclude that, under the facts of the reconstructed affidavit, the

---

[20]  *Id.* at 246 (quoting *Yusuf*, 461 F.3d at 390).
[21]  Doc. 46 (March 22, 2024 Memorandum Opinion) at 7-9.
[22]  *Id.* at 9-10.

Government is correct that "a direct chain of events connect[s] child pornography to 193 Sunset Circle."[23] The misstatements and omissions identified by Casher have no bearing on the probable cause determination as it concerns the search of the residence.

### 4. The Search of Casher's Person

Under the facts of the reconstructed affidavit, the individual who could be constitutionally searched is the suspected user of the "Jim50" account. Two possible culprits emerge from the facts of the reconstructed affidavit: James R. Casher, this Defendant, or James P. Casher, his late father. The sole information concerning either individual is as follows: a vehicle registered to James P. Casher at this address was observed in the driveway, and James R. Casher's email address was used to register a separate username under the IP address that uploaded the suspected CSAM.

But it is unclear to the Court that a successful challenge to the search of Casher's person would result in the suppression of any evidence. Defendant has made no effort to identify what information should be suppressed and how that information was discovered, either in the residence or on his person. Should no evidence have been discovered when searching Casher's person, this motion may be moot. Accordingly, I reserve judgment on this aspect of Defendant's motion, and I

---

[23] Doc. 60 (Brief in Opposition to Second Motion to Suppress Evidence and Motion for *Franks* Hearing) at 8.

will direct Defendant to indicate what, if any, evidence would be suppressed should he prove successful in his challenge to the search of his person. The Government will have the opportunity to respond. After reviewing these papers, I will then reach a determination concerning Defendant's Motion for a *Franks* Hearing as it pertains to the search of his person.

### III.   CONCLUSION

Defendant has failed to demonstrate the showing required to hold a *Franks* hearing as it pertains to the search of 193 Sunset Circle. As such, I deny his motion in part. However, I will order Casher to file supplemental briefing addressing the information that would be suppressed in connection with the search of his person. Following the Court's review of this information and the Government's response thereto, I will resolve the remaining aspects of this motion, and an appropriate hearing will be scheduled should it prove necessary.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge