## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:23-CR-00170 |
| v. | (Chief Judge Brann) |
| JAMES CASHER, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

### FEBRUARY 11, 2025

## I.    BACKGROUND

On June 21, 2023, a Grand Jury sitting in the Middle District of Pennsylvania returned a three-count indictment against James Casher, charging him with: one count of Enticement in violation of 18 U.S.C. § 2422(b); one count of Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2); and one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4).[1] Casher pled not guilty to all three counts, and he filed his First Motion to Suppress Evidence on January 29, 2024.[2] The Court denied that motion in its entirety on March 22, 2024.[3]

Casher then filed his Second Motion to Suppress Evidence and Motion for a Franks Hearing ("Second Motion") on July 29, 2024.[4] The Court denied this motion

---

[1]    Doc. 16 (Indictment).
[2]    Doc. 40 (First Motion to Suppress).
[3]    Doc. 47 (Ord. Denying First Motion to Suppress).
[4]    Doc. 55 (Second Motion to Suppress).

in part on October 7, 2024.[5] A hearing on the Second Motion was then held on January 24, 2025. The remaining aspects of this Second Motion are ripe for disposition. For the reasons that follow, Casher's Second Motion is denied as it pertains to the search of his person.

## II.    DISCUSSION

### A.    Factual Findings from the January 24, 2025 Hearing

The Court scheduled the January 24, 2025 hearing to address the following issues: "(1) Defendant's *Franks* Motion as it pertains to the search of his person and (2) what evidence, if any, was recovered solely from the search of Defendant's person."[6] The Government put forth three witnesses at this hearing: Federal Bureau of Investigation ("FBI") Special Agent Daniel Ives, Special Agent Jacob Fox, and Special Agent Porter Wilson. Defendant chose not to put forward any witnesses. My findings of fact from this hearing, based on the testimony of the Government's witnesses and its accompanying exhibits, are as follows.

#### 1.    Special Agent Ives

Ives was the lead agent assigned to the James Casher investigation, and he was present the day the search warrant was executed at 193 Sunset Circle, Tioga Pennsylvania.[7] Ives testified that when the FBI arrived, Defendant "was in his

---

[5]    Doc. 61 (Oct. 7, 2024 Mem. Op.).
[6]    Doc. 67 (December 3, 2024 Scheduling Ord.).
[7]    Doc. 76 (Jan. 24, 2025 Hearing Transcript) at 9:17-19, 11:12-14.

bedroom with a closed door."[8] After Casher complied with instructions from Wilson to get dressed and crate his dog, he exited his bedroom.[9] Ives then directed Casher to the living room to explain they had a federal search warrant.[10] Ives asked if they could go to the back porch to have this conversation; upon agreement from Casher, Ives, Fox, and Defendant "walked to the back porch of the residence."[11] At that point, Casher did not have anything in his possession.[12] While Ives and Fox began to interview Casher on the back porch, Wilson "walked out to [them] with two cellular phones that were found in the bedroom."[13]

### 2.    Special Agent Fox

Fox was also present the day the search warrant was executed at 193 Sunset Circle.[14] Fox remained in the living room, and he proceeded to exit out the back door to the porch with Ives and Casher.[15] Fox testified that Casher did not have anything relevant to the investigation on his person when he emerged from his bedroom.[16] Fox also indicated that Wilson "came out with two phones" while he and Ives

---

[8]   *Id.* at 18:4-5.
[9]   *Id.* at 18:10-14.
[10]  *Id.* at 18:23-19:3.
[11]  *Id.* at 19:1-6.
[12]  *Id.* at 19:9-11.
[13]  *Id.* at 21:16-20.
[14]  *Id.* at 43:3-6.
[15]  *Id.* at 43:7-15.
[16]  *Id.* at 44:1-3.

interviewed Casher on the back porch.[17] That moment was the first time Fox saw

these two phones.[18]

### 3.    Special Agent Wilson

Wilson was similarly present the day the FBI executed the search warrant at

193 Sunset Circle.[19] Wilson testified that after the FBI knocked on Casher's bedroom

door, he instructed him to crate his dog and get dressed as the FBI had a search

warrant.[20] Wilson then described how Casher was directed outside to be interviewed

by Ives and Fox while he remained in the room to assist with the search.[21] Wilson

testified to finding "two cell phones located on top of…a mini fridge" that "were on

chargers."[22] Before seizing the cell phones, they were photographed by the FBI in

the place they were found.[23] Wilson proceeded to bring the phones outside to where

Ives and Fox had begun to interview Casher.[24]

### B.    The *Franks* Motion is Moot

Special Agents Ives, Fox, and Porter presented a consistent narrative that the

FBI discovered the phones at issue in Casher's bedroom that I find to be credible.

Based on their testimony, I therefore find that the two cell phones at issue were not

---

[17]  *Id.* at 44:4-7.
[18]  *Id.* at 44:10-12.
[19]  *Id.* at 52:12-14.
[20]  *Id.* at 54:6-13.
[21]  *Id.* at 55:2-3.
[22]  *Id.* at 56:10-13.
[23]  *Id.* at 56:19-57:1.
[24]  *Id.* at 57:2-4.

found on Casher's person. As such, there is nothing to suppress in connection with the search of Defendant's person, and I deny the remaining aspects of his Second Motion as moot.

For the benefit of the parties, I briefly address the *Franks v. Delaware* issue that emerged in this case. The Court recently clarified the process it follows when evaluating a *Franks* challenge in the case of *United States v. Alford*:

> "*Franks* tasks courts with a three-step process. First, a court must assess the evidence the defendant asserts was omitted or falsely asserted, either intentionally or recklessly, from the affidavit. Next, a court must reconstruct an affidavit that includes any such omissions and strikes any such false statements. And finally, a court must assess the materiality of the omitted information to the probable cause determination by examining the reconstructed affidavit."[25]

### 1.    Step One

In *Wilson v. Russo*, the United States Court of Appeals for the Third Circuit instructed that "[i]n evaluating a claim that an officer both asserted and omitted facts with reckless disregard for the truth…(1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting."[26]

---

[25]  *United States v. Alford*, No. 4:22-CR-00010, 2025 U.S. Dist. LEXIS 12528, at *74-75 (M.D. Pa. Jan. 24, 2025).

[26]  *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000).

As the Court clarified in *Alford*, the Third Circuit has "adopt[ed] a two-step objective test for reckless omissions."[27] Under this test, "omissions are made with reckless disregard if an officer [(1)] withholds a fact in his ken [(2)] that 'any reasonable person would have known that this was the kind of thing the judge would wish to know."[28] In contrast, intentional or reckless false statements are measured "not by the relevance of the information, but the demonstration of willingness to affirmatively distort truth."[29] "An intentional false statement, like an intentional omission, is made 'knowingly and deliberately.'"[30] "'[S]imilar to the actual malice standard set forth in First Amendment defamation claims,' 'assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting.'"[31]

### 2.    Preliminary Showing

In its October 7, 2024 Memorandum Opinion, the Court concluded that Casher made the requisite preliminary showing. As the Court noted, Fox's failure to clearly distinguish between James R. Casher, the Defendant in this case, and James P. Casher, his father, could "be viewed as both a misrepresentation and an omission," but specifically withheld judgment on the issue of intentionality or recklessness by

---

[27] *Alford*, 2025 U.S. Dist. LEXIS 12528, at *79-80.
[28] *Wilson*, 212 F.3d at 788 (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)).
[29] *Id.*
[30] *Alford*, 2025 U.S. Dist. LEXIS 12528, at *98 (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)).
[31] *Id.* (quoting *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) and *Wilson*, 212 F.3d at 783).

merely concluding "that Casher has made the requisite preliminary showing as to the first *Franks* prong."[32]

At the January 24, 2025 hearing, it became evident that Fox's failure to differentiate Defendant from his father should be evaluated as a reckless, inadvertent omission, not a knowing omission or an intentional or reckless false statement. Having had the opportunity to evaluate Fox's demeanor, I conclude that he credibly testified that he did not intend to mislead the reviewing magistrate judge and that this mistake "was a complete oversight."[33]

But the Government misunderstands the effect of this credibility determination. It does not serve to rebut Casher's preliminary showing under *Franks*. As Defendant noted, because Fox was "aware of the [Cashers'] distinct identities and a reasonable magistrate judge would want to know this information, omitting it was reckless" despite the inadvertence of that omission.[34] If this aspect of the Second Motion had not become moot, the Court would have reconstructed the affidavit and evaluated whether probable cause remained.

---

[32]  Doc. 61 (Oct. 7, 2024 Mem. Op.) at 5-6.
[33]  Doc. 76 (Jan. 24, 2025 Hearing Transcript) at 42:1-9.
[34]  *Alford*, 2025 U.S. Dist. LEXIS 12528, at *90-91.

### III.    CONCLUSION

Based on the factual findings I have made, Casher's Second Motion is moot as there is no evidence to suppress from the search of his person. In accordance with the above, **IT IS HEREBY ORDERED** that:

1.    Defendant James Casher's Second Motion to Suppress Evidence and Motion for a *Franks* Hearing is **DENIED AS MOOT** as it pertains to the search of his person.

2.    A telephonic status conference will be scheduled by separate Order.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge